Jonathan D. Lupkin (JL 0792)
Melissa Yang (MY 8852)
RAKOWER LUPKIN PLLC
488 Madison Avenue, 18th Floor
New York, NY 10022
(212) 660-5550
(212) 660-5551 (facsimile)
jlupkin@rakowerlupkin.com
myang@rakowerlupkin.com

Robert E. Shapiro (admitted *pro hac vice*)
Wendi E. Sloane (admitted *pro hac vice*)
Shermin Kruse (application *pro hac vice*)
Sharon Calhoun (application *pro hac vice*)
BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
(312) 984-3150 (facsimile)
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com
shermin.kruse@bfkn.com
sharon.calhoun@bfkn.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LVL XIII BRANDS, INC.**, a *New York corporation*, <br><br> *Plaintiff*, <br><br> - vs. - <br><br> **LVMH MOËT HENNESSY LOUIS VUITTON SA, LOUIS VUITTON MALLETIER SA,** and **LOUIS VUITTON NORTH AMERICA INC.**, <br><br> *Defendants*. | **No.   14-cv-04869-PAE** <br><br> **Judge Paul A. Engelmayer** <br><br> **ANSWER, AFFIRMATIVE DEFENSES, AND AMENDED COUNTERCLAIM OF DEFENDANTS LOUIS VUITTON MALLETIER SA AND LOUIS VUITTON NORTH AMERICA INC.** |

1036274

Defendants Louis Vuitton North America Inc. ("LVNA") and Louis Vuitton Malletier SA ("LVM"), collectively referred to herein as "Defendants," by their undersigned attorneys, hereby submit the following Answer, Affirmative Defenses, and Amended Counterclaim in response to plaintiff LVL XIII Brands, Inc.'s Complaint:

## ANSWER

### NATURE OF THE ACTION

1.      This is an action in law and equity for trademark infringement, false designation of origin and trade dress infringement under the Lanham Act, unfair competition under the Lanham Act, N.Y. Gen. Bus. L. § 349 and the common law.

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they admit that this action alleges trademark infringement, false designation of origin, and trade dress infringement under the Lanham Act, unfair competition under the Lanham Act, N.Y. Gen. Bus. L. § 349, and the common law.

2.      LVL XIII (pronounced "Level 13") is a luxury shoe brand founded by Antonio Brown, a former accountant who founded the line after being laid off from his job at a luxury doll manufacturer, the Alexander Doll Company.

**ANSWER:**   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph.

3.      LVL XIII is a "luxury lifestyle" brand that specializes in high-end shoes, including sneakers that sell for $500-$1200 a pair. They are made of top-grade leathers and exotic skins in a variety of unique, flamboyant and distinctive designs and combinations.

**ANSWER:**   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph.

4.      LVL XIII's unique collection of footwear has caught the attention of, or been publicly noted as being seen on the feet, of celebrities such as star musicians Chris Brown and Jason DeRulo, rappers Nas and Jim Jones, supermodel Tyson Beckford, and athletes J.R. Smith of the New York Knicks and Kroy Biermann of the Atlanta Falcons. Actors Nick Cannon, Tracey Morgan, Jason Sudeikis, Chris Tucker and Tristan Wilds have been seen wearing LVL XIII footwear as well.

**ANSWER:**   Defendants deny that LVL XIII has a unique collection of footwear, and

they are without information or knowledge sufficient to form a belief as to the truth of the

remaining allegations contained in this paragraph.


5.      In addition to being recognized for their quality and originality, LVL XIII's footwear is distinguished by, and its brand has become recognized through, the placement on its shoes of distinctive rectangular metal plate across the front of the shoe toe including the legend "LVL XIII" engraved in the metal plate, secured by small screws in the corners of the metal plate (the "LVL XIII Toe Plate"), as typified by the shoes shown at left (arrow):

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they

admit that the image pictured in the Complaint appears to be a picture of a pair of men's low rise

boots with a rectangular metal plate across the toe of the shoe bearing a single metal screw at the

side of the plate, with "LVL XIII" engraved on the metal toe plate.


6.      The LVL XIII Toe Plate has no function other than as a branding device.

**ANSWER:**   Defendants deny the allegations contained in this paragraph.


7.      No other line of footwear utilized a branding device similar to the LVL XIII Toe Plate when LVL XIII introduced it in early 2013.

**ANSWER:**   Defendants deny the allegations contained in this paragraph.


8.      The LVL XIII Toe Plate is inherently distinctive.

**ANSWER:**   Defendants deny the allegations contained in this paragraph.

3

9.     Moreover, and in the alternative, as set forth in detail below, in the relatively short time since the introduction of the LVL XIII Toe Plate has also achieved distinctiveness in the relevant market.

**ANSWER:**    Defendants deny the allegations contained in this paragraph.

10.     Defendant Louis Vuitton, a competitor whose offerings include luxury footwear, has however begun to compete unfairly with LVL XIII by offering for sale footwear utilizing trade dress that is confusingly similar to the LVL XIII Toe Plate and which impinges on the goodwill in it.

**ANSWER:**    Defendants deny the allegations contained in this paragraph, except they admit that LVNA sells luxury footwear in the United States.

11.     Defendants are promoting, marketing, offering for sale and selling its own goods while exploiting the goodwill of LVL XIII in an effort to mislead and confuse prospective purchasers, or, alternatively, while causing reverse confusion, and is falsely designating the source of origin of its luxury designer shoe line or, alternatively but without limitation, is thereby wrongfully causing LVL XIII to lose control over its brand and its goodwill.

**ANSWER:**    Defendants deny the allegations contained in this paragraph.

12.     Defendant's actions are part of a deliberate attempt to divert sales away from LVL XIII by benefitting unlawfully from the goodwill LVL XIII has built in the LVL XIII Toe Plate trademark for luxury designer shoes in this District and throughout the United States. These actions will continue unless enjoined by this Court.

**ANSWER:**    Defendants deny the allegations contained in this paragraph.

## THE PARTIES

13.     LVL XIII is a New York corporation with an address of 1481 Fifth Avenue, New York, New York.

**ANSWER:**    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph.

4

14.     Defendant LVMH Moët Hennessy Louis Vuitton SA is a foreign business entity organized under the laws of the Republic of France, with a principal place of business at 22, avenue Montaigne, 75008 Paris, France.

**ANSWER:**     Defendants deny the allegations contained in this paragraph, except they admit that LVMH Moët Hennessy Louis Vuitton SA is a foreign business entity organized under the laws of the Republic of France, with a principal place of business at 22, avenue Montaigne, 75008 Paris, France.  Furthermore, Defendants aver that LVMH Moët Hennessy Louis Vuitton SA is no longer a defendant in this action because Plaintiff voluntarily dismissed it as a defendant.

15.     Defendant Louis Vuitton Malletier SA is a foreign business entity organized under the laws of the Republic of France, with a principal place of business at 22, Avenue Montaigne, 75008 Paris, France.

**ANSWER:**     Defendants admit the allegations contained in this paragraph.

16.     Defendant Louis Vuitton North America Inc. is a Delaware corporation with a principal place of business at 19 East 57th Street, New York, New York.

**ANSWER:**     Defendants admit the allegations contained in this paragraph.

### JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement and unfair competition pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

**ANSWER:**     Defendants admit the allegations contained in this paragraph.

18.     This Court has personal jurisdiction over all the defendants because they maintain a place of business or transact business in this District.

5

1036274

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they admit that LVNA maintains a place of business and transacts business in this district. Furthermore, Defendants aver that the question of proper jurisdiction states a legal conclusion to which no response is required and that they have not contested personal jurisdiction for purposes of this action.

19.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is affected by the acts alleged in the action is situated, in this District and because defendant's contacts are sufficient to subject it to personal jurisdiction in this District, as set for the in the allegations herein.

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they admit that LVNA maintains a place of business and transacts business in this venue. Furthermore, Defendants aver that the question of proper venue states a legal conclusion to which no response is required and that they have not contested venue for purposes of this action.

## ALLEGED FACTS

20.     LVL XIII was founded by Antonio Brown, a 29-year-old entrepreneur from Harlem and, later, Houston, who began his luxury footwear line after being laid off by the manufacturing company for whom he had worked for three years.

**ANSWER:**   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph.

21.     Beginning in early 2013, Mr. Brown, who is now LVL XIII's chief executive officer and creative director, built LVL XIII on the angel investments of friends and family and the inspired work and dedication of a small team of business and design professionals.

**ANSWER:**   Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph.

6

1036274

22.     On March 6, 2013, LVL XIII filed an application to register, under Section 1(b) of the Lanham Act, the LVL XIII Toe Plate as a trademark for footwear in International Class 25 and U.S. Classes 22 and 39.

**ANSWER:**     Defendants deny the allegations contained in this paragraph, except they admit that on March 6, 2013, LVL XIII filed an application under Section 1(b) of the Lanham Act seeking to register a composite design mark for footwear in International Class 25 under Application Serial Number 85/868,102 (the "'102 Application").   Furthermore, Defendants respectfully refer  the Court to the '102 Application for its full and correct terms.

23.     Despite operating on a shoestring budget that fell far short of the kind of marketing, advertising and other promotional expenditures associated with the successful launch of a fashion line, LVL XIII's June 2013 national press debut – which followed a month of intense social media groundwork – resulted in phenomenal press, fashion and entertainment industry coverage of the New York launch event hosted by Supermodel Tyson Beckford in July of 2013, resulting in widespread fame and recognition for the LVL XIII line in a few short months.

**ANSWER:**     Defendants deny that LVL XIII's line achieved widespread fame and recognition, and they are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

24.     LVL XIII scored early media attention with a June 13, 2013 interview of Mr. Brown. It focused on the development of and philosophy surrounding the LVL XIII footwear line, in the online *VERVE Social Magazine*, viewed regularly by over 22,000 social media influencers including journalists, artists, socialites, public relations specialists, writers, models, industry executives, and media personalities. The article, excerpted above, included photographs of the LVL XIII line, all displaying the distinctive LVL XIII Toe Plate.

**ANSWER:**     Defendants deny the allegations of the complaint, except they are without information or knowledge sufficient to form a belief as to the truth of the allegations that there was a June 13, 2013 interview of Mr. Brown in the online *VERVE Social Magazine* or that online *VERVE Social Magazine* is viewed regularly by over 22,000 social media influencers including

7

journalists, artists, socialites, public relations specialists, writers, models, industry executives, and media personalities. Furthermore, Defendants respectfully refer the Court to the article referenced in the paragraph for its full and correct terms.

25. That same month, pop star Jason Derulo appeared on the nationally-televised Good Morning America program wearing LVL XIII shoes, easily discerned by virtue of their distinctive LVL XIII Toe Plates, in which he put the shoes to extraordinary use in a display of acrobatic choreography. A screen capture of showing a frame from the extended performance by Derulo in his LVL XIII shoes is shown at right.

**ANSWER:**   Defendants deny that LVL XIII shoes are easily discerned by virtue of the metal toe plates and that the rectangular shape of the metal toe plates on LVL XIII's shoes are distinctive, and they are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

26. The next indication of LVL XIII's impact on the fashion world was a prominent mention in the online edition *Paper* magazine on July 13, 2013, including the LVL XIII promotional image shown below in which models are depicted wearing 13 different LVL XIII shoes, each of them bearing the distinctive LVL XIII Toe Plate.

**ANSWER:**   Defendants deny the allegations contained in the paragraph and respectfully refer the Court to the article described therein for its full and correct terms.

27. Another early media mention of LVL XIII's designs was by Tony Harris of the fashion blogger network for *Details*, a leading men's fashion and lifestyle magazine (*right*). His July 31, 2013 post was one of many that featured photographs of two LVL XIII footwear selections, bearing the distinctive LVL XIII Toe Plate, among his "favorite picks" from the summer 2013 fashion shows, alongside established designers such as Fred Perry, Frank Clegg and Del Toro. The photographs from Harris's article featured are shown at right.

**ANSWER:**   Defendants deny that the rectangular shape of the metal toe plates on LVL XIII's shoes are distinctive; they are without information or knowledge sufficient to form a belief

8

as to the truth of the remaining allegations contained in this; and they respectfully refer the Court to the blog described therein for its full and complete terms.

28.     LVL XIII began selling footwear in the United States bearing the LVL XIII Toe Plate in August of 2013.

**ANSWER:**     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph.

29.     On August 27, 2013, the U.S. Patent and Trademark Office ("PTO") recognized the LVL XIII Toe Plate as inherently distinctive and issued a Notice of Allowance for the LVL XIII Toe Plate.

**ANSWER:**     Defendants deny the allegations contained in this paragraph, except they admit that on October 22, the PTO issued a Notice of Allowance for the '102 Application and respectfully refer the Court to the Notice of Allowance described therein for its full and complete terms.

30.     LVL XIII's media profile exploded beyond the fashion press when "bad boy" music star Chris Brown was featured on the cover of the Fall 2013 issue of *Annex Man* magazine in connection with an article and series of photographs in different outfits, including one image depicting him wearing a pair of LVL XIII shoes bearing the distinctive LVL XIII Toe Plate, as shown at above left.

**ANSWER:**     Defendants deny the allegations contained in this paragraph, and they respectfully refer the Court to the article described therein for its full and complete terms.

31.     That fall a series of features in specialty fashion magazines, including Anglie, Examiner.com and Conde Nast's industry bible *Footwear News* also featured LVL XIII's footwear, readily identifiable wherever pictured by the distinctive LVL XIII Toe Plate.

9

**ANSWER:**   Defendants deny the allegations contained in this paragraph, and they respectfully refer the Court to the magazines, websites and articles described therein for their full and complete terms.

32.     Shortly thereafter, on November 11 2013, Jason Derulo made his second Good Morning America appearance in LVL XIII shoes, readily recognizable due to their distinctive LVL XIII Toe Plates, on a special Veteran's Day program seen by millions in which Derulo helped, on live national television, a military veteran propose to his girlfriend.

**ANSWER:**   Defendants deny that LVL XIII shoes are easily discerned by virtue of the metal toe plates and that the rectangular shape of the metal toe plates on LVL XIII's shoes are distinctive, and they are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

33.     LVL XIII's shoes started shipping to retail stores in November 2013, and the attention paid to LVL XIII continued well into 2014 with innumerable additional magazine and online media features and references.

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they are without information or knowledge sufficient to form a belief as to the truth of the allegations that LVL XIII's shoes started shipping to retail stores in November 2013 or that there were magazine and online media features and references to LVL XIII in 2014.

34.     For example, in March of this year, fashion photographer and blogger Tarrice Love dedicated a post entitled "GOTTA GET ME A PAIR OF LVL XIII" to a narrative of the LVL XIII story illustrated by sumptuous photographs of LVL XIII shoes, including the one at right, shown – as all LVL XIII shoes are – bearing the distinctive LVL XIII Toe Plate.

**ANSWER:**   Defendants deny the allegations contained in this paragraph, and they respectfully refer the Court to the post and photographs described therein for their full and complete terms.

10

35. LVL XIII's propulsion into the national consciousness continued with a May 9, 2014 interview in *Ebony* magazine's Style publication entitled, "Antonio Brown's Shoe Game is Crazy [INTERVIEW]." As shown below, the article included photographs of LVL XIII footwear, all bearing the distinctive LVL XIII Toe Plate and referring to LVL XIII's having secured trademark protection for the plates:

**ANSWER:** Defendants deny the allegations contained in this paragraph, and they respectfully refer the Court to the article described therein for its full and complete terms.

36. With his innovative LVL XIII line – including its distinctive branding through the LVL XIII Toe Plate – Mr. Brown was not only succeeding at developing a strong new fashion brand from the ground up. He was riding high on a growing trend in fashion retailing – luxury men's footwear – as noted in a March 13, 2014 article in *Women's Wear Daily*.

**ANSWER:** Defendants deny the allegations contained in this paragraph, and they respectfully refer the Court to the article described therein for its full and complete terms.

37. According to the *Women's Wear Daily* article, the men's footwear segment establish double-digit growth in 2013, with footwear retailing at $150 and up, growing 28 percent between 2012 and 2013.

**ANSWER:** Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and they respectfully refer the Court to the article described therein for its full and complete terms.

38. That same day, a post on the online publication for entrepreneurs, *Upstart Business Journal* entitled "Men developing fetish for fabulous, pricey sneakers" quoted and linked to that article in *Women's Wear Daily*, and provided readers with an online "slideshow" featuring "innovations from big companies and new brands alike."

39. **ANSWER:** Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph, and they respectfully refer the Court to the post described therein for its full and complete terms.

11

1036274

**ANSWER:**   Defendants deny the allegations that the LVL XIII shoes feature a distinctive plate at the toe of the shoe; they are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph; and they respectfully refer the Court to the photograph and post described therein for their full and complete terms.

40.     These phenomena – both the growth of the men's luxury footwear sector and the rapid gains made by LVL XIII toward becoming a significant force in that market – came, upon information and belief, to the attention of defendant Louis Vuitton.

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they admit that they are aware of the men's luxury footwear sector and growth within that sector.

41.     Thus in late February of 2014, Louis Vuitton began advertising its own line of men's footwear featuring a metal front toe plate on the outsole, essentially identical to the LVL XIII Toe Plate and selling for prices in the same range as LVL XIII's shoes.

**ANSWER:**   Defendants deny the allegations contained in this paragraph.

42.     For example, the Louis Vuitton website has, since that time, showed different versions of a sneaker called the "On the road sneaker," in both low-rise and boot versions, that have included a metallic toe plate, as shown below.

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they admit that the Louis Vuitton website has included the On the Road sneaker in low rise and boot versions and that an On the Road sneaker is pictured in Paragraph 42, which speaks for itself.

43.     Another version of the "On the road sneaker" is shown below, as advertised on another fashion website:

**ANSWER:**   Defendants deny the allegations contained in this paragraph, except they admit that Paragraph 43 contains a picture of an On the Road sneaker, which speaks for itself.

12

44.     Upon information and belief, these actions by Louis Vuitton were done willfully and in bad faith, in the full knowledge of the existence, success and nature of the LVL XIII footwear line, its distinctive branding by use of the LVL XIII toe plate and LVL XIII's proprietary rights therein, and with the purpose of either trading on the fame and goodwill associated with LVL XIII's Toe Plate or, alternatively and without limitation, forcing LVL XIII out of the very market niche it created.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

45.     On April 7, 2014 LVL XIII filed a Statement of Use with the PTO.

**ANSWER:**     Defendants admit the allegations contained in this paragraph and respectfully refer the Court to the Statement of Use described therein for its full and correct terms.

46.     The PTO reports the status of the its [sic] issuance of a registration for the LVL XIII Toe Plate, as of the date hereof, as pending review of the Statement of Use by a PTO examining attorney, an essentially ministerial act.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement, 15 U.S.C. § 1125(a))

47.     LVL XIII hereby incorporates by reference the allegations set forth above.

**ANSWER:**     Defendants hereby incorporate by reference their Answers to the allegations set forth above.

48.     Defendant's [sic] use of a device confusingly similar to the LVL XIII Toe Plate, or of trademarks confusing similar thereto in connection with the sale of merchandise similar to that sold by of LVL XIII constitutes use in commerce by defendant [sic] of the LVL XIII Toe Plate trademark and trade dress.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

13

49.     Defendant [sic] has used the LVL XIII Toe Plate trademark knowing it is the exclusive property of LVL XIII and without the permission, authorization or consent of LVL XIII.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

50.     Defendant's [sic] actions create the false and misleading impression that its goods originate from or are affiliated, connected, associated, sponsored or approved by LVL XIII, that it is authorized by LVL XIII to use the LVL XIII trademark or otherwise causes confusion regarding the origin of its goods.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

51.     Defendant's [sic] use of the LVL XIII Toe Plate trademark has been without the consent of LVL XIII and is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, and offered by defendant [sic] are warranted, authorized, sponsored or approved by LVL XIII when they are not.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

52.     Defendant's [sic] unauthorized use of the LVL XIII Toe Plate trademark has resulted in defendant unfairly benefiting from LVL XIII's advertising and promotion, and profiting from the reputation of LVL XIII and the LVL XIII Toe Plate trademark and trademark, to the substantial and irreparable injury of the public, LVL XIII, the LVL XIII Toe Plate trademark and the substantial goodwill represented thereby.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

53.     Alternatively, and without limitation, defendant's [sic] acts have or, unless enjoined by this Court, threaten to have the effect of causing reverse confusion, i.e., of pushing plaintiff's footwear bearing the LVL XIII Toe Plate trademark out of the market for footwear bearing the mark by utilizing its superior financial resources and overall brand equity to overwhelm the existing consumer association between LVL XIII and the toe plate brand it created.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

14

54.     Defendant's [sic] acts constitute willful trademark infringement as defined by Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) for which plaintiff is entitled to the relief set forth in 15 U.S.C. §1114.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

55.     By its wrongful acts, defendant [sic] has caused and unless restrained by the Court will continue to cause serious irreparable injury and damage to plaintiff and to the goodwill associated with the LVL XIII Toe Plate trademark, including diversion of customers, lost sales and lost profits.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

56.     Plaintiff has no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

### SECOND CLAIM FOR RELIEF
### (Federal False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))

57.     LVL XIII hereby incorporates by reference the allegations set forth above.

**ANSWER:**     Defendants hereby incorporate by reference their Answers to the allegations set forth above.

58.     Defendant [sic] has used the LVL XIII Toe Plate trademark, or trademarks confusingly similar thereto, in commerce, and continues to use them in commerce, in connection with defendant's advertisement, promotion, and offer of its goods.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

59.     In connection with defendant's [sic] advertisement, promotion, distribution, sales and offers of sales of its goods, defendant [sic] has affixed, applied and used false designations of origin and false and misleading descriptions and representations, including the LVL XIII Toe Plate trademark, which tend to confuse the public with respect to the origin, sponsorship, association or approval of good utilizing the LVL XIII Toe Plate.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

60.     Defendant [sic] has used the LVL XIII Toe Plate trademark with full knowledge of the falsity and confusing nature of such designation of origin, descriptions and representations, all to the detriment of LVL XIII.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

61.     Defendant's [sic] use of the LVL XIII Toe Plate trademark in association with defendant's goods constitutes false descriptions and representations tending falsely to describe or represent defendant [sic] and its goods as being authorized, sponsored, affiliated or associated with LVL XIII or, in the alternative, tending to cause reverse confusion such as to overwhelm plaintiff's trademark rights in the market and wrongfully to misappropriate the good will and fame associated with plaintiff's mark.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

62.     Defendant's [sic] acts constitute the use in commerce of false designations of origin and false or misleading descriptions or representations, tending to falsely or misleadingly describe or represent defendant's [sic] goods as those of LVL XIII in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) for which plaintiff is entitled to the relief set forth in 15 U.S.C. §1114.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

63.     Plaintiff has no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

### THIRD CLAIM FOR RELIEF
### (N.Y. Deceptive Business Practices, Gen. Bus. L. § 349)

64.     LVL XIII hereby incorporates by reference the allegations set forth above.

**ANSWER:**     Defendants hereby incorporate by reference their Answers to the allegations set forth above.

16

1036274

65.     Defendant's [sic] appropriation and actual use of the LVL XIII Toe Plate trademark in connection with its goods and in order to wrongfully exploit the goodwill and reputation associated therewith and attached thereto, or, in the alternative, its actions as alleged above which have resulted in or threaten to result in reverse confusion, constitute trademark infringement, false designation of origin and unfair competition in violation of N.Y. Gen. Bus. L. § 349.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

66.     Defendant's [sic] actions as alleged herein have caused and will continue to cause irreparable damage and injury to LVL XIII if not enjoined by this Court.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

67.     LVL XIII has no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

### SIXTH CLAIM FOR RELIEF [sic]
### (Unfair Competition under the Common Law)

68.     LVL XIII hereby incorporates by reference the allegations set forth above.

**ANSWER:**     Defendants hereby incorporate by reference their Answers to the allegations set forth above.

69.     The acts complained of herein constitute unfair competition, trademark infringement and tortious misappropriation under the common law of New York.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

70.     Plaintiff has no adequate remedy at law.

**ANSWER:**     Defendants deny the allegations contained in this paragraph.

### AFFIRMATIVE DEFENSES

17

1036274

## FIRST AFFIRMATIVE DEFENSE

1.      Plaintiff's claims are barred because the rectangular metal toe plate on Plaintiff's shoes is a non-distinctive feature of a product design that is not protectable as a trademark. Accordingly, on July 18, 2014, the PTO issued an Office Action on the '102 Application requiring LVL XIII to submit a disclaimer stating that "*[N]o claim is made as to the exclusive right to use 'THE RECTANGULAR SHAPE OF THE SHOE TOE PLATE' apart from the mark as shown*" because the rectangular shape of the shoe toe plate is a "non-distinctive feature of a product design."  (emphasis in original) Thus, LVL XIII does not have the exclusive right to use a rectangular-shaped toe plate on shoes and cannot prevent others, including Defendants, from using a rectangular-shaped toe plate on shoes (although the toe plate on Defendants' On the Road sneakers is not rectangular in shape).  LVL XIII has not responded to this Office Action.

## SECOND AFFIRMATIVE DEFENSE

2.      Plaintiff's claims are barred because the rectangular shape of the metal toe plate on Plaintiff's shoe has not developed secondary meaning, and, accordingly, Plaintiff has no trade dress rights in the rectangular shape of the shoe toe plate.

## THIRD AFFIRMATIVE DEFENSE

3.      Plaintiff's claims are barred because the rectangular shape of the metal toe plate on Plaintiff's shoes is an ornamental design feature on shoes and cannot be protected trade dress. The rectangular toe plates on Plaintiff's shoes are purely decorative and aesthetic and serve no source-identifying purpose.

## FOURTH AFFIRMATIVE DEFENSE

18

4.      Plaintiff's claims are barred because Defendants are not using a toe plate design that is confusingly similar to the rectangular metal toe plate on Plaintiff's shoes.  The metal toe plate on the On the Road sneaker is not rectangular in shape, is blank with no literal element, and does not contain the LVL XIII literal element.  Moreover, the On the Road sneaker was debuted to the public at the June 27, 2013 Louis Vuitton Fashion show in Paris, and was available for purchase in the U.S. in January 2014.

### FIFTH AFFIRMATIVE DEFENSE

5.      Plaintiff's claims are barred because Plaintiff is not the senior user of rectangular shaped metal toe plates on men's shoes.  Other brands, including LVM, have used metal toe plate on men's and women's shoes before LVL XIII's use of a rectangular shaped metal toe plate.  These toe plates,used by other brands before LVL XIII filed the '102 Application and before LVL XIII first used a rectangular toe plate in commerce, were designed in a variety of ornamental shapes, including rectangular shapes.  For example, media articles from 2011 describe metal toe plates on shoes and heels as the trend for the fall of 2011.  *See, e.g.,* the October 13, 2011 article on www.yournextshoes.com.

### SIX AFFIRMATIVE DEFENSE

6.      Plaintiff's claims are barred because Plaintiff has unclean hands.

### COUNTERCLAIM

Louis Vuitton North America, Inc. ("LVNA") and Louis Vuitton Malletier, S.A. ("LVM"), collectively hereafter referred to as "Counterclaimants," bring this counterclaim for a declaratory judgment that Plaintiff/Counter-defendant LVL XIII Brands Inc. ("LVL XIII") has

no exclusive right to use a rectangular-shaped metal accent plate on the front of the toe of footwear and a mandatory injunction requiring LVL XIII to amend U.S. Application Serial No. 85/868,102 the (the "'102 Application") by submitting a disclaimer stating that "*[N]o claim is made as to the exclusive right to use 'THE RECTANGULAR SHAPE OF THE SHOE TOE PLATE' apart from the mark as shown.*" This disclaimer would preclude LVL XIII from claiming the exclusive right to use a rectangular-shaped shoe toe plate, and would make clear that third parties, including Counterclaimants, are entitled to use rectangular-shaped shoe toe plates, including metal plates on the On the Road sneaker.

Louis Vuitton's Counterclaim also asserts claims for trademark infringement, false designation of origin, and unfair competition under New York law because LVL XIII's use of the "LVL XIII" on its products infringes Louis Vuitton's famous "LV" trademarks. Louis Vuitton seeks (1) a permanent injunction restraining LVL XIII from manufacturing, marketing, distributing, and selling products bearing the literal element "LVL XIII," including on a rectangular metal plate on a shoe toe; (2) a mandatory injunction requiring LVL XIII to amend the '102 Application and remove the literal element "LVL XIII" from the rectangular metal plate on the shoe toe; (3) a declaratory judgment that LVL XIII's inclusion of the literal element "LVL XIII" on it products infringes Louis Vuitton's trademarks; and (4) monetary damages resulting from LVL XIII's trademark infringement. In support of their Counterclaim, counterclaimants hereby allege and state as follows:

## NATURE OF THE DISPUTE

1.      LVL XIII has filed a four-count complaint seeking to enjoin the Counterclaimants from selling footwear with a rectangular-shaped metal accent plate on the front toe of a shoe, for

a recall of all footwear sold by LVNA bearing a rectangular shaped accent toe plate, for Counterclaimant's profits, treble damages, and attorneys' fees. The basis for all four counts of the complaint is LVL XIII's claim that it has trade dress rights in the shape of a rectangular shoe toe plate without the LVL XIII literal element. LVL XIII does not and cannot own trade dress rights in the shape of a rectangular metal plate at the toe of a shoe (the "Rectangular Toe Plate").

2.      Further, LVL XIII does not have any right to the literal element "LVL XIII" on the Rectangular Toe Plate because it infringes Louis Vuitton's famous "LV" trademarks.

3.      Louis Vuitton is the owner of numerous world-famous trademarks, including *inter alia*, Louis Vuitton's famous "LV Initials Logo" consisting of the interlocking, stylized letters "L" and "V" which Louis Vuitton first adopted and used in 1897. [CONFIRM DATE]

4.      The LV Initials Logo appears on almost every Louis Vuitton product, and due to the fame of the LV Initials Logo, Louis Vuitton is widely referred to simply as "LV."

5.      As LVL XIII's founder, Antonio Brown, admits, LVL XIII aspires to be a luxury lifestyle brand similar to Louis Vuitton, and has positioned itself in the marketplace as a competitor to more established luxury, lifestyle brands such as Louis Vuitton.

6.      In November 2013, at the earliest, LVL XIII began selling shoes with a Rectangular Metal Toe Plate with the engraved terms "LVL XIII," as well as zippers and, on information and belief, other hardware, including the words "LVL XIII."

7.      The Rectangular Toe Plate, including the engraved "LVL XIII," is prominently placed on LVL XIII's shoes.

8.      LVL XIII filed the '102 Application on an intent to use basis in March 2013 and claims that in August 2013, it first used in commerce the trade dress described in the '102 Application.

9.      LVL XIII is a late-comer to the trend of affixing ornamental metal accents to shoes. Metal shoe accents, such as the rectangular metal plate affixed to the front of the toe of LVL XIII's shoes, have been used by a number of fashion designers, including LVM, for years – long before LVL XIII even existed, much less decided to incorporate this element as part of its shoe design. Media articles from 2011 describe metal toe plates on shoes and heels as an "Interesting New Fall/Winter Trend." *See, e.g.,* the October 13, 2011 article on www.yournextshoes.com.

10.     On July 18, 2014, less than a month after LVL XIII filed this action, and three months after LVL XIII submitted its specimen in support of its statement of use for the '102 Application, the Patent and Trademark Office issued an Office Action requiring LVL XIII to submit a disclaimer stating that disclaimer stating that "*[N]o claim is made as to the exclusive right to use 'THE RECTANGULAR SHAPE OF THE SHOE TOE PLATE' apart from the mark as shown*." Not only has LVL XIII not submitted this disclaimer (although its response to the Office Action is not due until January 18, 2015), it failed to amend its complaint to inform the Court of this highly relevant fact, instead alleging that acceptance of its statement of use was "essentially a ministerial act." (Complaint, ¶ 46.)

11.     Because the rectangular shape of the toe plate is part of a product design, LVL XIII's rectangular toe plate is not and cannot be inherently distinctive. Therefore, LVL XIII could have trade dress rights in the rectangular shape of the toe plate only if LVL XIII has

developed secondary meaning in this product design feature.  The ubiquitous use of metal accents on footwear, including toe plates in rectangular and other styles, prevents rectangular metal plates on a toe of a shoe from acquiring distinctiveness.

12.     Moreover, on information and belief, LVL XIII was using the rectangular toe plate for, at most, only a matter of months before the Louis Vuitton On the Road sneaker became available for sale to U.S. consumers in January 2014.  The On the Road sneaker was debuted to the public at the June 27, 2013 Louis Vuitton Fashion Show in Paris, when models for the Men's Spring Summer 2014 Collection wore them.  On information and belief, LVL XIII had not developed secondary meaning in a rectangular toe plate design as of January 2014 and has not and cannot do so now.

13.     None of the limited promotion of the LVL XIII shoe, or the media coverage on which LVL XIII relies, features the rectangular shape of the metal toe plate apart from the literal LVL XIII element.  Thus, even if these limited promotional activities were sufficient to establish secondary meaning in a matter of months (which they were not), they did not establish secondary meaning rectangular shape of the metal toe plate apart from the literal LVL XIII element.

14.     Accordingly, Counterclaimants seek a declaration that LVL XIII has no exclusive rights in the rectangular shape of the metal toe plate.  In addition, Counterclaimants seek a mandatory injunction requiring LVL XIII to amend the '102 Application to disclaim any exclusive rights in the rectangular shape of the metal toe plate.

15.     Counterclaimants also assert claims for trademark infringement and false designation of origin because LVL XIII is manufacturing, marketing, and selling products throughout the United States, namely, men's shoes bearing the literal element "LVL XIII,"

which are likely to cause confusion with Louis Vuitton's famous "LV" trademark amongst consumers. These activities constitute federal trademark infringement, false designation of origin, and common law trademark infringement under New York state law.

16.     LVL XIII's misuse of Louis Vuitton's trademark is intentional. LVL XIII is using Louis Vuitton's famous trademark with the intent to cause confusion or create an association with Louis Vuitton in the minds of consumers. As such, LVL XIII's infringement is willful.

## PARTIES

17.     Counterclaim-Plaintiff, Louis Vuitton North America, Inc. is a Delaware corporation with its principal place of business at 19 East 57th Street, New York, New York. LVNA markets and distributes Louis Vuitton merchandise in the United States.

18.     Counterclaim-Plaintiff Louis Vuitton Malletier, SA is a French *société anonyme* duly organized and existing under the laws of France with a principal place of business at 2 Rue du Pont Neuf, Paris, France.  LVM is engaged, *inter alia*, in the manufacture, importation, sale and distribution in interstate and foreign commerce, including within this judicial district, of prestigious luxury merchandise including, without limitation, handbags, tote bags, luggage, apparel, shoes, eyewear, jewelry, watches, and other fashion accessories.

19.     On information and belief, Counterclaim-Defendant LVL XIII Brands, Inc. is a New York corporation with its principal place of business at 1481 Fifth Avenue, New York, New York.  Also, on information and belief, LVL XIII has been and is doing business in this District by, among other things, advertising, promoting, and selling its products bearing the infringing mark that is the subject of this Counterclaim to consumers in this District over the Internet, including through its publicly accessible, interactive website at www.lvlxiii.com.

24

## JURISDICTION AND VENUE

20.     This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Lanham Act, 15 U.S.C. §§ 1501 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. § 2201. This court also has jurisdiction pursuant to 28 U.S.C. § 1338 with respect to the claims arising under the Lanham Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 for the claims arising out of violation of Section 349 of the New York General Business Law. Moreover, this counterclaim arises out of the same transaction or occurrence set forth in the Complaint, is ancillary to the main action, and derives its jurisdictional basis from that supporting Counter-Defendant's claims.  As such, it is a compulsory counterclaim under Fed. R. Civ. P. 13(a).

21.     This Court can enter the declaratory relief sought in this Counterclaim because this case presents an actual case or controversy and is within this Court's jurisdiction, as set forth in the paragraphs above.

22.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction. Venue is also proper in this district under 28 US.C. § 1392(b) because, on information and belief, LVL XIII resides in this District and has, on information and belief, marketed and sold its infringing products to consumers in this District over the Internet. Moreover, Counterclaim-Defendant has waived any objection to venue or personal jurisdiction by bringing its claims against the Counterclaimants in this Court.

<u>**F**ACTUAL **B**ACKGROUND</u>

A.    **Between 2011 and 2014, Other Brands, Including Luxury**
<u>**Brands, Used Metal Accents In Men's Footwear As Ornamental**</u>
<u>**Design Elements**</u>**.**

23.    During the 2011-2014 fashion seasons, luxury fashion designers, including Christian Louboutin, Giuseppe Zanotti, Versace, Lanvin, Dior, Salvatore Ferragamo, Balenciaga, and Costumer National, among others, introduced footwear collections which incorporated metal accents as ornamental design elements, including rectangular shapes and accents at the toe of the shoe.  Media articles from 2011 describe metal toe plates on shoes and heels as the interesting new trend for the fall/winter season.  *See, e.g.,* the October 13, 2011 article on www.yournextshoes.com.

24.    Balenciaga's 2011 Fall/Winter  men's footwear line included a shoe with a metal toe plate:



26

25.     The Christian Louboutin Metal Toe Cap Lace Up was part of Louboutin's 2011 Fall/Winter Collection:



26.     Giuseppe Zannotti included metal accented sneakers in its 2012 Fall/Winter Collection.   For example, The Homme Double Gold Plate Sneakers, which   retail for $930, feature two ornamental metal plate design elements:



27.     Christian Louboutin included the Vikram Men's Flat, which features an ornamental metal toe, in its 2012Fall/Winter  collection:

27



28.     Louboutin's 2012Fall/Winter Collection included the Christian Louboutin Metal Henri Flat with metal toe cap:



29.     Costume National's 2012Fall/Winter footwear line included a lace-up oxford shoe with an ornamental metal toe plate:

1036274



30.     Dior's Spring 2014 collection included Dior's Metal Toe Derby Shoe, featuring an ornamental metal toe plate.



31.     Laurance Dacade's leather Chelsea boots featured a rectangular metal plate on the toe of the shoe:

1036274



32.     Givenchy's Richelieu shoe featured a rectangular metal plate on the heel:



33.     Fiesso's crocodile print pointed toe leather shoes featured a rectangular

ornamental toe plate affixed with metal screws, similar to LVL XIII's ornamental toe plate:

30





34.     There are also a number of brands that have designed women's shoes featuring rectangular plates at the toe of the shoe, including Alexander McQueen in his 2011 Fall Collection, House of Harlow, Brian Atwood, Michael Kors, Newrocks, Fendi, whose Fenista

1036274

Boot has been available since at least October 2011, Santia Clogs, and Elyse Walker. Photographs of these shoes are attached as **Exhibit A** to this Counterclaim.

**B.      LVM Used Metal Accents, Including A Plate At The Toe Of The Shoe, As An Ornamental Design Element Long Before LVL XIII Filed The '102 Application.**

35.     Louis Vuitton's Fall/Winter 2012 menswear collection was introduced at Paris Fashion Week during January 2012 – over a year before LVL XIII filed the '102 Application. That collection included footwear which featured ornamental metal shoe accents including metal toe caps and metal ornamentation on the eyelets of shoes.

36.     The metal lace-up shoe, featured in Louis Vuitton's Fall/Winter line included ornamental metal details on the toe, side panels, and lacing:



37.     The Fall/Winter 2012 Collection also featured a metal lace-up boot with ornamental metal details on the toe and heel.

1036274



38.     Louis Vuitton continued the use of ornamental metal accents in its 2013 Fall/Winter men's footwear line. The Talisman Loafer, from the Fall/Winter 2013 line, features an ornamental metal plate on the shoe heel which is stamped with Louis Vuitton's famous LV trademark. The Talisman Loafer retails for $1,450.



39.     The Louis Vuitton Nightbird Richelieu, from the Fall/Winter 2013 footwear line, which retails for $1150, features patent calf leather and a metal heel plate.

33



**C.      LVL XIII Tries To Obtain The Exclusive Right To Use The
Rectangular Shape Of A Metal Toe Plate On Footwear.**

40.      Despite the ubiquitous use of metal accents and plates on shoes as ornamental

design elements over at least the past several years, LVL XIII is seeking to obtain the exclusive

right to use a rectangular shape of a metal toe plate on footwear.

41.      On March 6, 2013, LVL XIII filed the '102 Application on an intent to use basis.

In the '102 Application, LVL XIII seeks trade dress registration of "a shoe toe design featuring a

rectangular metal plate across the front of the shoe toe with the wording LVL XIII engraved in

the metal plate, and four small screws in the corners of the metal plate."  The '102 Application

thus sought registration of a composite trade dress design that included a rectangular shape of a

metal toe plate on footwear as well as the LVL XIII literal element.

42.      On June 24, 2013, the PTO issued a non-final Office Action on the on the '102

Application, refusing registration and requiring LVL XIII to submit a new drawing showing the

four screws in the corners of the metal plate in dotted lines, as they cannot be part of the mark.

43.      On June 25, 2013, LVL XIII submitted its response to the Office Action,

providing a new drawing showing the screws in dotted lines, which indicated they were not part

34

1036274

of the trademark.  The '102 Application was published for opposition on August 27, 2013, and

the PTO issued a Notice of Allowance on October 22, 2013.

44.     On April 7, 2014, LVL XIII submitted a Statement of Use, claiming that it first

used the trade dress in commerce on August 1, 2013.  LVL XIII submitted as its specimen two

photographs of shoes with a rectangular metal toe plate affixed with two screws, with the name

LVL XIII engraved on the metal plate.  The specimen LVL XIII submitted with the Statement of

Use failed to comport with the '102 Application as approved for publication.  The specimen had

two screws rather than four securing the toe plate and failed to show the screws in dotted lines as

required by the PTO in the June 24, 2014 Office Action and as shown in LVL XIII's substitute

drawing ad submitted on June 25, 2014.

45.     On July 15, 2014, the PTO issued a Notice of Acceptance of the Statement of Use

for the '102 Application.  Three days later, however, on July 18, 2014, the PTO issued an Office

Action requiring three amendments to the '102 Application, including the requirement to submit

a new drawing.  Among the amendments was the requirement that LVL XIII "disclaim the

design of the rectangular shape of the shoe plate because the mark consists of a non-distinctive

feature of product design that is not registrable on the Principal Register without sufficient proof

of acquired distinctiveness."  In the Office Action, the PTO explained:

> A product design can never be inherently distinctive as a matter of law;
> consumers are aware that such designs are intended to render the goods more
> useful or appealing rather than identify their source.  [Citations omitted.]
> Thus, consumer predisposition to equate a product design with its source does
> not exist. [Citation omitted.]  Accordingly, a disclaimer of the rectangular
> shape of the shoe toe plate is required because it is a configuration of a feature
> of the shoe design.  If [LVL XIII] does not provide the required disclaimer,
> the USPTO may refuse to register the entire mark.  [Citations omitted.]  [LVL
> XIII] should submit a disclaimer in the following standardized format:

35

> *No claim is made to the exclusive right to use "THE*
> *RECTANGULAR SHAPE OF THE SHOE TOE PLATE" apart*
> *from the mark as shown.* [Emphasis in the original.]

A copy of the July 18, 2014 Office Action is attached hereto as **Exhibit B.**

46.     The Office Action states that LVL XIII must respond within six months, *i.e.,* on or before January 18, 2015.  To date, LVL XIII has not responded to the July 18, 2014 Office Action.

47.     Although LVL XIII filed its complaint a month before the PTO issued the July 18, 2014 Office Action, LVL XIII did not attempt service on LVNA and LVM until August 4, 2014, three weeks after the July 18, 2014 Office Action issued.  Before attempting service on the Counterclaimants, LVL XIII did not amend its complaint to inform the Court or the Defendants/Counterclaimants that the PTO required it to disclaim the rectangular shape of the metal toe plate.

**D.     LVL XIII Has Not Developed Secondary Meaning In The**
**        Rectangular Shape Of A Metal Plate On The Toe Of A Shoe.**

48.     LVL XIII has neither the length nor exclusivity of use of a rectangular shape of a metal plate on the toe of a shoe that could develop secondary meaning.  Although LVL XIII claims August 1, 2013 as its date of first use in commerce, by its own admission, it did not begin to ship its shoes to any retail stores until November 2013.  Thus, the shoes bearing the metal toe plate have been on the market only a short time, and were on the market for five months, at most, before the On the Road sneaker's January 2014 market debut.

49.     As demonstrated above, LVL XIII is one of many companies to use metal accents, including rectangular plates, on the toe of a shoe.  Such accents at the toe of the shoe have been used well before LVL XIII began to use them.

36

50.    On information and belief, LVL XIII has not had sales success sufficient to develop secondary meaning.  On information and belief, LVL XIII produced only approximately 3,000 shoes to be sold worldwide and its sales of shoes with the rectangular toe plate have been relatively minimal.  On information and belief, LVL XIII's shoes are not currently available for purchase.

51.    On information and belief, LVL XIII's advertising expenditures have not been sufficient to develop secondary meaning in the rectangular shape of a metal plate on the toe of a shoe.  LVL XIII admits it operates on a "shoestring budget."  On information and belief, from March 2013 until January 2014, LVL XIII's predominant source of promotion was the personal Twitter account of Antonio Brown, LVL XIII's founder – "@Antonioismuted."  Before the June 27, 2013 debut of the On the Road sneaker in Paris, such Twitter postings were relatively few and infrequent.

52.    On information and belief, there has been insufficient unsolicited media coverage to develop secondary meaning in the rectangular shape of a metal plate on the toe of a shoe.  By its own admission, LVL XIII was the subject of only a handful of third-party promotional stories before January 2014, when the LVM's On the Road sneaker (which debuted in June 2013) was available for purchase

53.    On information and belief, the advertising and promotion of the LVL XIII rectangular metal toe plate has not featured, much less emphasized, the rectangular metal design by itself, apart from the LVL XIII word element, as an identification of source.  Rather, the rectangular shape of the metal toe plate contains the literal element and is shown as a design element.  The metal toe cap is referenced as a design element. Thus, the promotional activities

37

LVL XIII alleges in its complaint, even if true, are irrelevant because they have not directed the consumer to the rectangular metal toe plate without the literal LVL XIII element as an indication of source.

54.     LVL XIII has not pled that it conducted any surveys before filing this complaint that provide evidence that it had developed consumer recognition of a rectangular shape of a metal plate on the toe of a shoe as a source identifier, much less that it had developed any such consumer recognition before the On the Road sneaker's debut at the June 27, 2013 Fashion Show or its availability for purchase in the U.S., starting in January 2014.

**E.   Louis Vuitton's Intellectual Property Rights.**

55.     Founded in Paris in 1854, Louis Vuitton is one of the premier luxury fashion houses in the world.  Originally the creator of custom-made luggage and trunks, Louis Vuitton is well-known for its high quality leather goods as well as for its apparel, footwear, eyewear, jewelry, watches, and many other fashion and luxury goods.

56.     Louis Vuitton has used the world famous "LV Initials Logo" since at least as early as 1897.  The initials "LV" signify Louis Vuitton's founder, Louis Vuitton.



57.     Most of Louis Vuitton's products incorporate the LV Initials Logo Trademark, many of which prominently feature the LV Initials Logo Trademark.

1036274



58.    The literal element of the LV Initials Logo is "LV," and phonetically, the pronunciation of the LV Initials Logo is "LV."

59.    As a result of over a century of use in conjunction with a wide variety of high-quality products, including, but not limited to, luggage, handbags, shoulder bags, tote bags, briefcases, apparel, and footwear and Louis Vuitton's substantial investment in the marketing and advertising of products bearing this mark, the LV Initials Logo Trademark has become uniquely and exclusively identified in the minds of consumers with Louis Vuitton.  Indeed, the LV Initials Logo Trademark is widely regarded as one of the most iconic and memorable fashion logos ever created.

60.    Due to the widespread use of the LV Initials Logo Trademark, Louis Vuitton is commonly referred to simply as "LV" by the consuming public and is known by the term "LV."

61.    LVM is the owner of 20 registered U.S. trademarks for a wide variety of goods which incorporate or consist of the "LV Initials," including, *inter alia*, the following trademark registrations and applications for the LV Initials Logo Trademark, copies of which are attached hereto as **Group Exhibit C.**

| U.S. REG./APP. NO. | MARK | CLASS | STATUS |
|---|---|---|---|
| 4,614,736 | LV Initials Logo | 9, 16, 26 | Registered |
| 2,909,002 | LV Initials Logo | 9, 24 | Registered |
| 2,361,695 | LV Initials Logo | 25 | Registered |
| 2,291,907 | LV Initials Logo | 34 | Registered |
| 1,938,808 | LV Initials Logo | 14, 24 | Registered |
| 1,794,905 | LV Initials Logo | 16, 25 | Registered |
| 1,519,828 | LV Initials Logo | 18 | Registered |
| 85/624,028 | LV Initials Logo | 3 | Published |

62.    Each of Louis Vuitton's registrations set forth above is in full force and effect and Registration Nos. 1,519,828, 1,794,905, 1,938,808, 2,361,695, 2,291,907, 2,909,002 have become incontestable

63.    Additionally, Louis Vuitton owns Registration No. 3,903,297 for the trademark LV ROADSCAPE and Registration No. 3,209,369, for the mark LV LANDSCAPE which has become incontestable. Copies of the registrations are attached as **Group Exhibit D**.

40

64.     Louis Vuitton has invested millions of dollars and decades of time and effort to create consumer recognition of the LV Initials Logo Trademark and to ensure that the public, not only in the United States, but throughout the world, associates the LV Initials Logo Trademark, and the initials "LV," with high quality, luxury leather goods and apparel emanating from Louis Vuitton.

65.     Almost all Louis Vuitton products bear the LV Initials Logo Trademark, and it, and the initials "LV," are a critical part of the fame and reputation of the brand Louis Vuitton. [CONFIRM]

66.     As a result of the wide renown acquired by the LV Initials Logo Trademark, Louis Vuitton's worldwide reputation for high quality and luxury leather goods and apparel, and the wide geographic distribution and extensive sale of various products bearing the LV Initials Logo, the LV Initials Logo, and the initials "LV," alone, have acquired secondary meaning, fame, and significance in the minds of the purchasing public.  The purchasing public immediately identifies the products and services offered under the LV Initials Logo, and the initials "LV," alone, with a single source.  Therefore, the LV Initials Logo, and the initials "LV," alone, and the goodwill associated therewith, is of inestimable value to Louis Vuitton.

67.     As a result, not only is the LV Initials Logo Trademark a strong mark, but it has become famous.

**F.  Plaintiff's Use Of "LVL XIII" Infringes Louis Vuitton's Intellectual Property Rights In Its "LV" Trademarks.**

68.     LVL XIII manufactures, markets, and sells men's luxury footwear. Since its founding, LVL XIII has promoted itself as a luxury, lifestyle company. Additionally, LVL XIII

41

has positioned itself in the mens' footwear industry as an competitor or alternative to more established luxury brands such as Louis Vuitton.

69.     All of LVL XIII's footwear features the Rectangular Toe Plate with the engraving "LVL XIII," which incorporates the "LV" initials.

70.     The use of "LVL XIII" on the Rectangular Toe Plate infringes Louis Vuitton's rights in the LV Initials Logo Trademark and the "LV" initials.

71.     Louis Vuitton has not authorized LVL XIII to use the LV Initials Logo Trademark, the LV Initials, or any variations thereof, or a confusingly similar trademark in connection with any of its products.

72.     Defendants/Counterclaimants are not aware of any particular significance in the term "Level 13" or any legitimate reason why Plaintiff has chosen to depict "Level 13" as "LVL XIII."

73.     On information and belief, LVL XIII selected "LVL XIII" for use on the Rectangular Toe Plate so that consumers would associate LVL XIII with Louis Vuitton, or be confused that Louis Vuitton was the source of LVL XIII's goods.

74.     Consumers associate the LV Initials Logo Trademark, and the "LV" initials, themselves, with Louis Vuitton and believe that Louis Vuitton is the source of goods bearing the LV Initials Logo Trademark, the "LV" initials, or any similar mark.

75.     LVL XIII's use of the mark "LVL XIII" on its footwear is likely to cause confusion as to the source of the LVL XIII goods.

76.     For example, LVL XIII's use of "LVL XIII" on its footwear is likely to cause confusion with Louis Vuitton's On the Road Sneaker, that Plaintiff alleges infringes its intellectual property rights.



| LVL XIII SNEAKER | LOUIS VUITTON SNEAKER |
|---|---|

77.     As a result of Louis Vuitton's federal registrations for its LV Initials Logo Trademark, LVL XIII was on constructive notice of the LV Initials Logo Trademark.

78.     LVL XIII is unlawfully exploiting and benefiting from the recognition and goodwill of the LV Initials Logo Trademark and is knowingly creating confusion in the marketplace regarding the source or sponsorship of LVL XIII's products.

79.     The goodwill that Louis Vuitton has built up in its LV Initials Logo Trademark through years of substantial investment and effort is put at risk as a result of LVL XIII's imitation of Louis Vuitton's registered trademark and its intellectual property rights in the "LV" initials.  LVL XIII's conduct is likely to create confusion in the marketplace, as consumers are likely to believe that LVL XIII's products come from or are authorized by, endorsed by,

43

associated with, or licensed by, Louis Vuitton or are otherwise genuine Louis Vuitton brand products.

80.     LVL XIII's acts are injuring, and are likely to continue to injure, Louis Vuitton's goodwill and reputation.  Louis Vuitton has no control over the quality of LVL XIII's products that are being sold bearing the "LV" initials as part of "LVL XIII," which is confusingly similar to the LV Initials Logo Trademark and the "LV" initials.  As a result, Louis Vuitton's extremely valuable reputation may be permanently damaged.  If LVL XIII's conduct is not enjoined, it will greatly injure the value of the LV Initials Logo Trademark, and the "LV" initials, and the ability of Louis Vuitton to indicate goods emanating from a single source.

81.     LVL XIII's unauthorized acts as described herein have caused, and will continue to cause, irreparable damage to Louis Vuitton's business and goodwill unless permanently restrained by this Court.  Louis Vuitton has no adequate remedy at law.

**COUNT I**
**DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201**
**(LVL XIII Has No Trade Dress Rights In The Shape**
**of A Rectangular Metal Plate On The Toe Of Shoes)**

82.     Counterclaimants repeat and reallege the allegations set forth in paragraphs 1 through 81 above, as if fully set forth herein.

83.     An actual and live dispute, case, or controversy has arisen and currently exists between the parties regarding whether the LVL XIII has the exclusive right to use, as trade dress, a shoe toe design featuring a rectangular metal plate across the front of the toe of a shoe.

84.     LVL XIII has filed a four-count complaint against Counterclaimants alleging trademark infringement and false designation of origin under the Lanham Act, deceptive business practices under the New York Deceptive Business Practices Act (Gen. Bus. L. § 349)

44

and common law unfair competition.  LVL XIII seeks a permanent injunction prohibiting Counterclaimants from using a rectangular metal toe plate design on shoes, even though Counterclaimant's shoes do not use the LVL XIII literal element, seeking a mandatory injunction to recall the On the Road shoes, and seeking profits from the sale of the On the Road shoes, treble damages, and attorneys' fees.

85.     Counterclaimants and LVL XIII thus have adverse and antagonistic interests in the subject matter of the dispute, case, or controversy.

86.     The predicate for all four counts of LVL XIII's complaint is that it has protectable trade dress rights in a shoe toe design featuring a rectangular metal plate across the front of the toe of a shoe, even without the LVL XIII literal element.

87.     Counterclaimants therefore seek a declaratory judgment that LVL XIII is not entitled to the exclusive use of a shoe toe design featuring a rectangular metal plate across the front of the toe of a shoe.

88.     A shoe toe design featuring a rectangular metal plate across the front of the toe of a shoe is not and cannot be inherently distinctive.

89.     LVL XIII has not developed secondary meaning in a shoe toe design featuring a rectangular metal plate across the front of the toe of a shoe, and did not do so in the five months between LVL XIII's alleged launch of its shoes in August 2013 and the launch of Counterclaimants' On the Road sneaker in January 2014.

90.     LVL XIII's shoe toe design featuring a rectangular metal plate across the front of the toe of the shoe is an ornamental design feature which has been used by other designers for several years and, therefore, cannot be protected as trade dress.

91.     Pursuant to 28 U.S.C. § 2201, Louis Vuitton is entitled to a declaratory judgment that LVL XIII's Toe Plate Design is not untitled to trade dress protection under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), or common law, and is not entitled to federal trade dress registration.

**COUNT II**
**MANDATORY INJUNCTION**
**<u>(Disclaimer of Non-distinctive Product Design)</u>**

92.     Counterclaimants repeat and reallege the allegations set forth in paragraphs 1 through 91 above, as if fully set forth herein.

93.     LVL XIII has filed the '102 Application, seeking to register "a shoe toe design featuring a rectangular metal plate across the front of the shoe toe with the wording LVL XIII engraved in the metal plate, and four small screws in the corners of the metal plate."

94.     On July 18, 2014, the PTO issued an Office Action requiring, *inter alia,* that LVL XIII "disclaim the design of the rectangular shape of the shoe plate because the mark consists of a non-distinctive feature of product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness."  In the Office Action, the PTO explained:

> A product design can never be inherently distinctive as a matter of law; consumers are aware that such designs are intended to render the goods more useful or appealing rather than identify their source. [Citations omitted.] Thus, consumer predisposition to equate a product design with its source does not exist. [Citation omitted.]  Accordingly, a disclaimer of the rectangular shape of the shoe toe plate is required because it is a configuration of a feature of the shoe design.  If [LVL XIII] does not provide the required disclaimer, the USPTO may refuse to register the entire mark.  [Citations omitted.]

> [LVL XIII] should submit a disclaimer in the following standardized format:

> ***No claim is made to the exclusive right to use "THE RECTANGULAR SHAPE OF THE SHOE TOE PLATE" apart from the mark as shown.***  [Emphasis in the original.].

46

95.     LVL XIII has not submitted the Disclaimer required by the PTO.

96.     LVL XIII has filed this lawsuit against Counterclaimants, seeking to enjoin their use of a rectangular-shaped shoe toe plate, and to recover their profits, as well as treble damages and attorneys' fees, all on the basis that LVL XIII has protectable trade dress rights in the rectangular shape of a shoe toe plate.

97.     Counterclaimants will be irreparably harmed if LVL XIII is allowed to register the '102 Application without disclaiming the rectangular shape of the toe plate because LVL XIII is attempting to use a registration of a rectangular-shaped shoe toe plate to prevent Counterclaimants from using this ornamental design element as part of its shoe design.  Such an injunction would put Counterclaimants at a competitive disadvantage, for which there is no remedy in money damages.

98.     The balance of the hardships is in Counterclaimants' favor and Counterclaimants have no adequate remedy at law.

99.     Counterclaimants seek a mandatory injunction requiring LVL XIII to submit a disclaimer with respect to  the '102 Application in the following standardized format:  "***No claim is made to the exclusive right to use "THE RECTANGULAR SHAPE OF THE SHOE TOE PLATE" apart from the mark as shown.***"

## COUNT III

### Trademark Infringement (15 U.S.C. §1114(1))

100.    Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 99, above.

101.    The registrations for the LV Initials Logo Trademark are valid, subsisting, and in full force and effect.

102.    Pursuant to 15 U.S.C. §1057(b) and 15 U.S.C. §1065, Louis Vuitton's registrations of the LV Initials Logo Trademark provide *prima facie* evidence of the validity of such registrations and of Louis Vuitton's ownership of the LV Initials Logo Trademark.  The registrations also provide the exclusive right to Louis Vuitton to use the LV Initials Logo Trademark in commerce in connection with the products identified on the Principal Register.  Furthermore, pursuant to 15 U.S.C. § 1065, certain registrations for the LV Initials Logo Trademark are incontestable.  The incontestability of the registrations is conclusive evidence of the validity of the LV Initials Logo Trademark, Louis Vuitton's ownership of the LV Initials Logo Trademark, and Louis Vuitton's exclusive right to use the LV Initials Logo Trademark and the "LV" initials in commerce.  15 U.S.C. § 1115(b).

103.    LVL XIII's Rectangular Toe Plate trade dress on its footwear includes the literal element "LVL XIII" and infringes on the LV Initials Logo Trademark and Louis Vuitton's rights to the "LV" initials (the "Infringing Products").  LVL XIII's use of such design mark is without the authorization of Louis Vuitton.  As such, LVL XIII has manufactured or caused to be manufactured, distributed, offered for sale, sold, advertised, and promoted the Infringing

48

Products in commerce and, unless enjoined, will continue to manufacture and/or cause the manufacture, distribution, sale, and offer for sale of the Infringing Products in commerce.

104.    LVL XIII has used the infringing "LVL XIII" mark on products, including those that are marketed as luxury, lifestyle products.

105.    Luxury consumers are the intended end user of LVL XIII's Infringing Products. Such consumers fall within the target market for Louis Vuitton's products bearing the LV Initials Logo Trademark

106.    LVL XIII's conduct has caused, and will likely continue to cause, confusion, mistake, and deception among the general consuming public about the origin and quality of the Infringing Products.

107.    LVL XIII's conduct constitutes infringement of the registered LV Initials Logo Trademark in violation of Louis Vuitton's rights under Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

108.    On information and belief, LVL XIII knows that its use of the "LVL XIII" mark infringes on the Louis Vuitton registrations and that such use is likely to confuse the public. LVL XIII had constructive notice of the LV Initials Logo Trademark, which was registered before LVL XIII was founded. Since at least the date that LVL XIII became aware of Louis Vuitton's On the Road sneaker, which bears the LV Initials Logo Trademark, LVL XIII was aware of Louis Vuitton's rights in the LV Initials Logo Trademark and the "LV" initials.  LVL XIII has knowingly and intentionally continued to sell and advertise confusing and deceiving products to consumers.  By these actions, LVL XIII demonstrated its unlawful intention to

49

infringe upon the registered LV Initials Logo Trademark Mark and Louis Vuitton's rights in the use of the "LV" initials.

109.    LVL XIII's use of a mark that infringes on the LV Initials Logo Trademark has damaged Louis Vuitton's goodwill in its trademarks, prestige, and reputation of its premium quality fashion accessories, and, unless permanently enjoined, will continue to damage Louis Vuitton's goodwill in its trademarks, prestige, and reputation.   The potential harm to Louis Vuitton's goodwill, prestige, and reputation is both vast and irreparable.

110.    Louis Vuitton has no adequate remedy at law.

111.    In advertising, manufacturing, offering for sale, distributing, and/or selling the Infringing Products, LVL XIII has acted willfully, in bad faith, and in reckless disregard of Louis Vuitton's rights.

112.    To the extent that LVL XIII derives a profit from the advertising, distribution, and sale of the Infringing Products, LVL XIII will be unjustly enriched at Louis Vuitton's expense. Louis Vuitton is therefore entitled to an accounting and disgorgement of all profits gained by LVL XIII from its advertisement, manufacture, distribution, and/or sale of the Infringing Products.

1036274

**COUNT IV**

**False Designation of Origin/Unfair Competition (15 U.S.C. § 1125(a)(1)(A))**

113.   Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 112, above.

114.   For almost 30 years, Louis Vuitton has used the LV Initials Logo Trademark as an identifier of source.  As a result of the tremendous secondary meaning Louis Vuitton has created, the LV Initials Logo Trademark is a strong mark entitled to the broadest scope of protection. This broad protection includes Louis Vuitton's exclusive right to use the "LV" initials.

115.   LVL XIII's unauthorized use of the "LV" initials and a confusingly similar mark to the LV Initials Logo Trademark in connection with the Infringing Products constitutes a use in commerce of a false designation of origin, as LVL XIII's use of the "LVL XIII" mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of LVL XIII with Louis Vuitton, or as to the origin, sponsorship, or approval of LVL XIII's goods or commercial activities by Louis Vuitton.  Consumers are likely to be misled into believing that LVL XIII is associated with Louis Vuitton and that the Infringing Products are genuine Louis Vuitton products, or were sponsored by, licensed by, or otherwise approved by Louis Vuitton.

116.   On information and belief, LVL XIII is on actual and constructive notice of Louis Vuitton's exclusive rights in the LV Initials Logo Trademark and the "LV" initials.  LVL XIII's use of such marks is willful and in bad faith, and is being done with the full knowledge of the

goodwill and the reputation associated with the LV Initials Logo Trademark, and the "LV" initials, and with full knowledge that LVL XIII has no right, license, or authority to use the LV Initials Logo Trademark or any other marks or trade dress confusingly similar thereto.

117.    LVL XIII's acts constitute false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

118.    LVL XIII's conduct has caused, and is causing, immediate and irreparable injury to Louis Vuitton and will continue to both damage Louis Vuitton and to deceive the public unless enjoined by this Court.

119.    Louis Vuitton has no adequate remedy at law.

## COUNT V

### New York Deceptive Business Practices
### (N.Y. Deceptive Business Practices, Gen. Bus. L. § 349)

120.    Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 119, above.

121.    For almost 30 years, Louis Vuitton has continuously used its LV Initials Logo Trademark in connection with a wide variety of high quality products. The LV Initials Logo Trademark is one of Louis Vuitton's most iconic trademarks. Louis Vuitton has invested millions of dollars and decades of time and effort to create consumer recognition of the LV Initials Logo Trademark and to ensure that the public, not only in New York, but throughout the United States and the world, associates the LV Initials Logo Trademark, and the "LV" initials with high quality, luxury leather goods emanating from Louis Vuitton.

122.    The LV Initials Logo Trademark has acquired secondary meaning, fame, and significance in the minds of the purchasing public. The purchasing public immediately identifies

52

the products and services offered under the LV Initials Logo Trademark, and the "LV" initials, with a single source.  The LV Initials Logo Trademark gained secondary meaning, fame, and significance in the minds of consumers, in New York and throughout the world, before LVL XIII began manufacturing or selling the Infringing Products. As a result, not only is the LV Initials Logo Trademark a strong mark, but it has become famous.

123.    LVL XIII has marketed and sold products that are confusingly similar to the LV Initials Logo Trademark that incorporate the "LV" initials. The Infringing Products unlawfully appropriate and exploit the goodwill in Louis Vuitton's Products.

124.    As a result of its marketing and sale of the Infringing Products, LVL XIII has caused a likelihood of confusion, and false designation of origin, with the LV Initials Logo Trademark.  Additionally, LVL XIII's activities have caused, and unless enjoined, will continue to cause, a likelihood of damage of the LV Initials Logo Trademark.

125.    LVL XIII's actions were, and continue to be, knowing, or with reckless disregard for, or willful blindness to, Louis Vuitton's rights.

126.    Louis Vuitton has no adequate remedy at law.

127.    LVL XIII's conduct, unless permanently enjoined, will cause irreparable harm to Louis Vuitton and to its goodwill and reputation.

**WHEREFORE**, Louis Vuitton North America, Inc. and Louis Vuitton Malletier, S.A. pray that this court enter judgment for Louis Vuitton North America, Inc. and Louis Vuitton Malletier, S.A. and against LVL XIII Brands, Inc. as follows:

A. Declaring that LVL XIII is not entitled to trade dress protection under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or common law, and is not entitled to federal trade dress registration;

B. Issuing a mandatory injunction requiring LVL XIII to submit a disclaimer with respect to  the '102 Application in the following standardized format:  "*No claim is made to the exclusive right to use "THE RECTANGULAR SHAPE OF THE SHOE TOE PLATE" apart from the mark as shown.*"

C. Finding that LVL XIII's adoption and use of the "LVL XIII" mark constitutes infringement of Louis Vuitton's registered trademark rights in violation of Section 32 of the Lanham Act;

D. Finding that LVL XIII's adoption and use of the "LVL XIII" mark constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act;

E. Finding that LVL XIII's advertisement and sale of the Infringing Products were, and continue to be, conducted with knowing, or with reckless disregard for, or willful blindness to, Louis Vuitton's rights;

F. Permanently enjoining LVL XIII, and all of its officers, agents, servants, employees, and their attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, from:

(1) Imitating, copying, or making unauthorized use of the LV Initials Logo Trademark, the "LV" initials, or any mark that is confusingly similar or a colorable imitation of the LV Initials Logo Trademark or the "LV" initials;

(2) Importing, manufacturing, producing, using, distributing, circulating, advertising, selling, offering for sale, promoting or displaying the Infringing Products or any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of any of the LV Initials Logo Trademark, the "LV" initials, or any mark that is confusingly similar or a colorable imitation of the LV Initials Logo Trademark, the "LV" initials, or any other indicia associated with Louis Vuitton;

(3) Using any false designation of origin or false description, or performing any act which can, or is likely to, lead members of the trade or public to believe that LVL XIII is associated with Louis Vuitton, or that any product imported, manufactured, produced, distributed, circulated, advertised, promoted, displayed, sold, or offered for sale by LVL XIII is associated with Louis Vuitton, is connected with Louis Vuitton, is a genuine product of Louis Vuitton, or is authorized, licensed, sponsored, or otherwise approved by Louis Vuitton;

(4) Engaging in any other activity constituting unfair competition with Louis Vuitton, or constituting infringement of the LV Initials Logo Trademark;

(5) Instructing, assisting, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (1)-(5) above.

G. Ordering that LVL XIII deliver up to counsel for Louis Vuitton for destruction all infringing products, and all labels, tags, signs, packages, advertisements, promotional or marketing materials, and any other materials or any other articles bearing the LV Initials Logo Trademark, the "LV" initials, or any other marks that infringe the LV Initials Logo Trademark, are confusing similar to or a colorable imitation of, or dilute the LV Initials Logo Trademark, and that Louis Vuitton be permitted to destroy all such materials without compensation to LVL XIII;

H. Ordering an accounting of LVL XIII's profits from its distribution and/or sale to the public of the Infringing Products;

I. Awarding Louis Vuitton LVL XIII's profits arising out of LVL XIII's trademark infringement, false designation of origin, and unfair competition;

J. Awarding Louis Vuitton its attorneys' fees as a result of LVL XIII's intentional misconduct, pursuant to 15 U.S.C. §1117(a);

K. Awarding Louis Vuitton its costs and disbursements, including reasonable attorneys' fees, pursuant to 15 U.S.C. §1117(a), 815 ILCS 510/1, *et seq.* and other applicable law;

L. Awarding Louis Vuitton interest, including prejudgment interest, on the foregoing amount pursuant to 15 U.S.C. §1117(a); and

M. Awarding Louis Vuitton North America, Inc. and Louis Vuitton Malletier, S.A. such other and forth relief as this Court deems just and proper.


Dated:  December 26, 2014                     Respectfully submitted,


                                              By: /s/ *Jonathan D. Lupkin*
                                              Jonathan D. Lupkin (JL 0792)
                                              Melissa Yang (MY 8852)
                                              RAKOWER LUPKIN PLLC
                                              488 Madison Avenue, 18th Floor
                                              New York, NY 10022
                                              (212) 660-5550
                                              (212) 660-5551 (facsimile)
                                              jlupkin@rakowerlupkin.com

                                              Robert E. Shapiro (admitted *pro hac vice*)
                                              Wendi E. Sloane (admitted *pro hac vice*)
                                              Shermin Kruse (admitted *pro hac vice*)
                                              Sharon Calhoun (admitted *pro hac vice*)

1036274

BARACK FERRAZZANO KIRSCHBAUM &
NAGELBERG LLP
200 W. Madison Street, Suite 3900
Chicago, Illinois 60606
(312) 984-3100
(312) 984-3150 (facsimile)
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com
shermin.kruse@bfkn.com
sharon.calhoun@bfkn.com

*Attorneys for Defendants*

56